SO ORDERED.

SIGNED this 30th day of June, 2025.



_Dale L. Somers_
Dale L. Somers
United States Chief Bankruptcy Judge

___

*Designated for Online Publication*
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| In re:<br>**Apple Central KC, LLC,**<br>　　　　Debtor. | Case No. 24-21427<br>Chapter 11 |
| **Apple Central KC, LLC,**<br>　　　　Plaintiff,<br>v.<br>**Applebee's Franchisor, LLC,**<br>　　　　Defendant. | Adversary No. 25-6002 |

**Memorandum Opinion and Order**
**Denying Motion for Discretionary Abstention**

Before the Court is Applebee's Franchisor, LLC ("Applebee's") Motion for Discretionary Abstention (the "Motion") seeking this Court's abstention from hearing Adversary Proceeding No. 25-06002 (the "Adversary Proceeding) in favor of the United States District Court for the District of

Kansas. Apple Central KC, LLC (the "Debtor") opposes the Motion. For the following reasons, the Motion is denied.

**The Background of the Adversary Proceeding**

Applebee's is a franchisor of restaurants known as Applebee's Grill & Bar in the casual dining industry. Applebee's grants franchisees the right to operate specific restaurants, provides necessary intellectual property licenses, and obtains franchisees' agreement to operate the restaurants pursuant to specific terms set forth in the franchise agreements. In exchange for these services, Applebee's receives payments from franchisees principally in the form of monthly royalties based on the restaurants' revenues.

Applebee's entered into franchise agreements (the "Franchise Agreements") with the Debtor for eight restaurants (the "Restaurants") in the Kansas City area in the years 2015 through 2017. Under the Franchise Agreements, the Debtor was required to operate the Restaurants on the agreed-upon terms and to make regular payments of royalties and advertising fees to Applebee's. The Debtor also took over the leases associated with certain Restaurants by entering into lease assignment and assumption agreements (the "Lease Assignments") with various Applebee's affiliates.

On October 30, 2024, the Debtor closed Restaurants without Applebee's consent and stopped paying royalties and advertising fees. On the same day, Applebee's filed its Complaint in the United States District Court for the

District of Kansas (the "District Court"), Case No. 2:24-cv-02497 (the "Civil Case"). Applebee's named the Debtor's principal and guarantors as defendants,[1] alleging they were liable for the Debtor's breaches of the Franchise Agreements and Lease Assignments. And on that same date, the Debtor filed its Chapter 11 Petition.

On January 8, 2025, Applebee's filed its proof of claim in the amount of $10,836,208.80 (the "Proof of Claim") for damages it sustained from the Debtor's breach of contract.[2] On January 13, 2025, the Debtor initiated the Adversary Proceeding, asserting the following claims: 1) breach of the Franchise Agreements (Count I), 2) breach of the covenant of good faith and fair dealing with respect to the Franchise Agreements (Count II), and 3) an objection to the Proof of Claim (Count III). In its Answer, Applebee's denied the allegations, asserted several affirmative defenses (e.g., failure to state a claim, waiver and estoppel, statute of limitations, and failure to mitigate) and added a counterclaim.[3]

---

[1] The following were named defendants: William J. Georgas, individually; William J. Georgas, Trustee of the WJG Revocable Trust dated July 7, 2020; Steven B. Steinmetz, Trustee of the Sophia K. Georgas 2020 Irrevocable Trust dated December 22, 2020; and Steven B. Steinmetz, Trustee of the John W. Georgas 2020 Irrevocable Trust dated December 22, 2020.

[2] Claim No. 20-1. The Debtor has not filed an objection to the Proof of Claim in the main bankruptcy case but has done so as part of the Adversary Proceeding.

[3] Adv. Proc. Doc. 12. Applebee's includes the following in its counterclaim: Counts I – VIII Breach of Contract (Franchise Agreements for the Restaurants), Counts IX-XV Breach of Contract (Lease Assignments), Count XVI Breach of Contract

On February 3, 2025, Applebee's filed this Motion along with a Motion to Withdraw the Reference to the District Court pursuant to 28 U.S.C. § 157(d) (the "Motion to Withdraw the Reference"). This Court has recommended that the District Court deny the Motion to Withdraw the Reference for many of the same reasons applicable here.[4]

**The Parties' Contentions**

Applebee's argues the District Court is best suited to hear the Adversary Proceeding because the counts of breach of contract and breach of the covenant of good faith and fair dealing arise under state law and are non-core. Additionally, Applebee's contends "[t]he District Court possesses an intimate knowledge of the Civil Action as a result of the fairly advanced procedural posture of such action."[5] Next, Applebee's contends permitting the Adversary Proceeding in this Court would delay the bankruptcy case and increase administrative expenses. Lastly, Applebee's urges this Court, at a minimum, to abstain until such time as the District Court considers the Motion to Withdraw the Reference.

---

(Sublease), and Counts XVII-XIX Breach of Contract (Franchise Agreements for the Overland Park, KCMO, and Melody Lane Restaurants).

[4] A Report to the District Court recommending the denial of the Motion to Withdraw the Reference will be filed contemporaneously with this order.

[5] Motion at 9.

The Debtor counters that the claims it asserts in the Adversary Proceeding are core because they will be considered in the context of the Debtor's objection to the Proof of Claim, and this Court can enter final judgment on those core claims. In addition, the Debtor argues several other factors weigh in favor of retention of the Adversary Proceeding: 1) no party is entitled to a jury trial, 2) the Bankruptcy Court has significant familiarity with the parties and the issues, 3) nothing in subchapter V precludes a debtor from asserting core claims for damages for the benefit of unsecured creditors, and 4) administrative expenses will not increase because the Debtor's retention of its attorneys is being paid by AFC Apple Parent Holdings, LLC.

**Analysis**

Permissive abstention is governed by 28 U.S.C. 1334(c)(1), which provides as follows:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

"Even if abstention is not mandatory, § 1334(c)(1) permits a bankruptcy court to exercise its discretion to abstain when doing so would be in the interest of justice, or in the interest of comity or respect for state law."[6] "The primary

---

[6] *Bank of Tescott v Boucek* (*In re Boucek*), 2018 WL 9597158, at *6 (Bankr. D. Kan. July 31, 2018) (unpublished) (citations omitted).

concern should be whether the federal bankruptcy objectives will be properly served if the bankruptcy court cedes jurisdiction to a state court or whether duplication of effort and delay may be a consequence of abstention."[7]

A court has broad discretion in its decision to permissively abstain or not to abstain.[8] Federal courts have developed a laundry list of relevant factors to consider in exercising that discretion:

    1. the effect or lack of effect on the efficient administration of the estate if a court abstains;

    2. the extent to which state law issues predominate over bankruptcy issues;

    3. the difficulty or unsettled nature of the applicable state law;

    4. the presence of a related proceeding commenced in the state court or other nonbankruptcy court;

    5. the jurisdictional basis, if any, other than 28 U.S.C.A. § 1334;

    6. the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

    7. the substance rather than form of an asserted "core" proceeding;

---

[7] *Id.* (quoting 1 William L. Norton III, *Norton Bankr. L. & Prac. 3d*, § 8:6 at 8-28 (Thomson Reuters 2018)).

[8] *Montoya v. Curtis (In re Cashco, Inc.)*, 614 B.R. 715, 725 (Bankr. D.N.M. 2020) (citations omitted).

8. the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

9. the burden on the bankruptcy court's docket;

10. the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

11. the existence of a right to a jury trial;

12. the presence in the proceeding of nondebtor parties; and

13. any unusual or other significant factors.[9]

The relevance of the factors will depend on the particular circumstances of each case.[10]

**Discussion**

Because many of the foregoing factors overlap with those considered in the context of the Motion to Withdraw the Reference,[11] the Court begins its

---

[9] *In re Lunt*, 2011 WL 1656404, at *1-2 (Bankr. D. Kan. May 2, 2011).

[10] 1 *Norton Bankr. L. & Prac. 3d*, § 8:6, at 8-28.

[11] Courts have considered several factors in making the determination of whether to withdraw the reference, including 1) whether the claims are core or non-core, 2) judicial economy, 3) prevention of forum shopping, 4) promoting uniform administration of the Bankruptcy Code, and 5) the presence of a jury demand. *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993).

analysis with the reasons it cited in its recommendation that the District Court deny withdrawal of the reference:[12]

- there has been little activity in the District Court Case so judicial efficiency would not necessarily be served by abstention;[13]

- while the determination of each party's contentions in the Adversary Proceeding involves state law, that determination necessarily underlies the resolution of the Debtor's objection to the Proof of Claim;

- the state law issues (i.e., breach of contract and breach of the covenant of good faith and fair dealing) are not particularly complex;

- claim allowance is unquestionably an integral function of the Bankruptcy Court and an enumerated core proceeding under 28 U.S.C. § 157(b)(2)(B); and

- Applebee's and certain affiliates waived their right to a jury trial.[14]

Other factors also weigh against abstention. Because the determination of liability under the Franchise Agreements is inextricably tied to the consideration of the Proof of Claim, severing the contract issues from the claim allowance process would be inefficient. Additionally, presiding over this

---

[12] *See* Report and Recommendation to the District Court on Motion to Withdraw Reference filed contemporaneously with this order.

[13] This Court has presided over numerous hearings and is quite familiar with the parties and the issues in both the main bankruptcy case and the Adversary Proceeding. This is in stark contrast to the District Court Case in which the only filings (before the case was stayed) were the Defendants' Answer and a discovery request.

[14] The Order Granting Motion to Strike Jury Demand will be entered in the Adversary Proceeding contemporaneously with this order.

Adversary Proceeding will not overly burden this Court's current docket. Furthermore, there is no evidence that administrative costs will increase substantially if the Adversary Proceeding is retained by this Court. Finally, as noted previously, the defendants in the Civil Case are guarantors being sued on a guaranty claim that is derivative of the claims brought by Applebee's against the Debtor; the guarantors are not named in the Adversary Proceeding. The Court's judgment in the Adversary Proceeding will be final and capable of being given preclusive effect by the District Court in the Civil Case, thereby minimizing inconsistent results.

**Conclusion**

For the foregoing reasons, abstaining and ceding jurisdiction to the District Court will not serve the objectives of this bankruptcy case. Applebee's Motion for Discretionary Abstention is therefore denied.

**It is so ordered.**

# # #